UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

Sari E. Newman,

      Plaintiff,

                              Case No. 1:22-cv-06948-JMF

v.

JPMorgan Chase Bank, N.A.,

      Defendant

---------------------------------------------------X


**<u>Plaintiff's Response in Opposition to
Defendant's Motion for Summary Judgment</u>**

*/s/ Justin M. Baxter*
Justin M. Baxter
Baxter & Baxter, LLP
8835 SW Canyon Lane, Suite 130
Portland, Oregon 97225
(503) 297-9031 (Telephone)
(503) 888-1969 (Cell)
(503) 291-9172 (Facsimile)
justin@baxterlaw.com

*/s/ Shimshon Wexler*
1118 Empire Rd.
Atlanta, GA 30329
212-760-2400
917-512-6132 (fax)
swexleresq@gmail.com

*Counsel for Plaintiff*

# Table of Contents

INTRODUCTION ................................................................................................ 4

FACTUAL BACKGROUND .............................................................................. 4

SUMMARY JUDGMENT STANDARD ............................................................ 8

ARGUMENT ...................................................................................................... 9

   1.   SUMMARY ............................................................................................. 9

   2.   THE ELECTRONIC FUNDS TRANSFER ACT ...................................... 10

   3.   DEFENDANT FAILED TO COMPLY WITH SECTION 1693g. ............. 12

   4.   DEFENDANT FAILED TO COMPLY WITH SECTION 1693f ............... 13

   5.   BONA FIDE ERROR DEFENSE PRESENTS GENUINE ISSUES OF FACT ................................................................................................................ 21

CONCLUSION ................................................................................................... 28

# Table of Authorities

**Cases**

*Almon v. Conduent Bus. Servs., LLC*, No. SA-19-CV-01075-XR, 2022 WL 902992 (W.D. Tex. Mar. 25, 2022) .................................................... 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ................................................................................................... 9

*Arnold v. Bayview Loan Servicing, LLC*, 659 Fed.Appx. 568 (11th Cir. 2016) .... 23

*Bisbey v. D.C. Nat'l Bank*, 793 F.2d 315 (D.C.Cir.1986) ..................................... 11

*Bryant v. Maffucci*, 923 F.2d 979 (2d Cir. 1991) ................................................... 9

*Burns v. First Am. Bank*, 2006 WL 3754820 (N.D.Ill.Dec.19, 2006) ................... 11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) . 9

*Clark's Jewelers v. Humble*, 823 P.2d 818 (Kan.Ct.App. 1991) .......................... 22

*Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349 (6th Cir.2008) ..................... 11, 13

*Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350 (11th Cir. 2009) .......... 23

*Green v. Cap. One, N.A.*, 557 F. Supp. 3d 441 (S.D.N.Y. 2021) .......................... 12

*In re TD Bank*, 325 F.R.D. at 165 ...................................................................... 24

*Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530 (7th Cir. 2005) ............. 23

*Owen v. I.C. System, Inc.*, 629 F.3d 1263 (11th Cir. 2011) .................................. 22

*Smith v. Bank of Haw.*, 2019 WL 404423 (D. Haw. Jan. 31, 2019) ...................... 24

*United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391 (2023) .............. 12

*United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) . 9

*Vallies v. Sky Bank*, 591 F.3d 152 (3d Cir. 2009) ................................................ 24

*Voeks v. Pilot Travel Ctrs.*, 560 F. Supp. 2d 718 (E.D. Wis. 2008) ...................... 24

*Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579 (9th Cir. 2021) ........... 11, 13

**Statutes**

15 U.S.C. § 1693 .......................................................................... *passim*

**Other Authorities**

OCC Comptroller's Handbook, Consumer Compliance-Electronic Fund Transfer Act, Version 2.0, August 2014, p.25; previously stated in OCC Advisory Letter Al 2001-9 ....................................................................................... 16

**Rules**

Official Interpretation of § 1005.11(c)(4) ........................................................... 16

**Regulations**

12 C.F.R. § 1005.6(b) ....................................................................... 13, 15

Plaintiff Sari E. Newman ("Plaintiff' or "Ms. Newman") files this response in opposition to defendant JPMorgan Chase Bank, N.A.'s ("Defendant" or "Chase") motion for summary judgment [Doc. 51], as follows:

## INTRODUCTION

Plaintiff Sari E. Newman ("Plaintiff' or "Ms. Newman") brings this civil action against defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase"), for violations of the Electronic Funds Transfer Act (EFTA), 15 U.S.C. § 1693 et seq. This Court should deny defendant's motion for summary judgment because there are genuine disputes as to material facts and defendant is not entitled to judgment as a matter of law.

## FACTUAL BACKGROUND

Plaintiff Sari Newman is 69 years' old. (Attachment 2, Declaration of Sari Newman ("Newman Dec.") at ¶ 2). In 2018, her husband was diagnosed with cancer, and they were initially told that the cancer was manageable. (Id. at ¶ 3). However, they soon learned that the cancer was terminal, and in October 2018, Perry passed away. (Id.)

After her husband's death, Ms. Newman understandably was suffering but she was slowly moving on with her life. Then the $46,975 theft which gave rise to this lawsuit occurred. Ms. Newman's life savings consisted of the proceeds of her

husband's life insurance policy. (Id. at ¶ 4). The proceeds were used to purchase an apartment to live in, and the remainder was put into her Chase savings account. (Id. at ¶ 5). Ms. Newman believed that her remaining time living would be over after she spent this money and would not have any money left to live off. (Id. at ¶ 6; see also Deposition of Sari Newman ("Newman Dep.") at 41:4-12.

A total of $46,975 was stolen from Ms. Newman's savings account between January 19, 2022, and April 18, 2022, by means of small withdrawals to a fraudulently opened Aspiration Financial account. (See Newman Dec. at ¶¶ 7-23). Until Ms. Newman learned of the theft, she had never heard of Aspiration Financial. (Id. at. ¶ 23).

When Ms. Newman learned of the theft, she called Chase's fraud department who told her to go into a branch to discuss the theft. (Id. at ¶ 8). Ms. Newman went into her branch and was told by the people who worked in the branch that she would get the money back. (Id. at ¶ 9). In fact, though the investigation was taking place at an unknown location in an unknown way by unknown people who never bothered to call Ms. Newman and properly investigate the theft, Ms. Newman also filed a police report about the theft. (Id. a ¶ 10).

Shortly after reporting the theft, Chase wrote to Ms. Newman saying that because certain Aspiration charges were not reported within 60 days of the first statement upon which they appeared, they would not be credited. (Id. at ¶ 12). Ms.

Newman also received a separate letter listing the charges that Chase was liable for. (Id. at ¶ 12). That letter asked her to return a form providing information about the theft. (Id.).

Shortly after returning the form attesting to the nature of the Aspiration theft, Ms. Newman was given a $38,975 credit. (Id. at ¶ 13). Ms. Newman did not believe this credit was a provisional one, but believed that this was a final decision, and was ready to move on with her life. (Id. at ¶ 14).

Unfortunately, on June 8, 2022, Chase provided Ms. Newman with a letter stating that it changed its mind. Chase reversed $24,975 of charges of the provisional credit which occurred from 1/19/22 until 3/4/22, claiming the charges were authorized. (Id. at ¶ 15).

On June 9, 2022, Ms. Newman received another letter saying that Chase made permanent the provisional credit of the other $14,000 in charges which occurred from 3/4/22 until 4/5/22 because it agreed those transactions were incorrect. (Id. at ¶ 16). Chase has indicated that Aspiration provided this $14,000. (See Defendant's Rule 56.1 Statement of Undisputed Facts ("Dfts. SMF") at ¶¶ 24, 26). It is noteworthy that two separate charges for $2,000 which occurred on 3/4/22 were treated differently by Chase; one was determined to be authorized another was determined to be unauthorized. (See Newman Dec. at ¶ 17).

Ms. Newman exercised the rights given to her by the June 8, 2022 letter, which provided an opportunity for her to see the information that Chase used for its research on the Aspiration charges. (Id. at ¶ 19). On July 18, 2022, Chase sent that information to Ms. Newman, which consisted solely of a fraudulent electronic signature on an Aspiration account application which Ms. Newman had no knowledge of, and which was the totality of Ms. Newman's dispute. (Id. at ¶ 20). The application cited a phone number for Ms. Newman that was not her actual phone number and with which she had never been associated. (Id. at ¶ 21).

After this money was retaken from her, Ms. Newman was helpless and didn't know what to do. (Id. at ¶ 18). Ms. Newman was suicidal and saw a therapist for the first time in her life. (Id.). She was not able to sleep and lost 20 pounds. (Id.). She wrote to congresswoman Kathleen Rice and tried to get Chase to fix the problem. (Id.).

Only after this lawsuit was filed, Chase reimbursed her for a total of $46,975 which is the sum of the unauthorized transactions. (Id. at ¶¶ 24-25). $14,000 was reimbursed before this lawsuit was filed. (Id. at ¶ 16). After this lawsuit was filed, $24,975 was provisionally reimbursed in November 2022 (a final decision as to the $24,975 was made in January 2023). (Id. at. ¶ 25). $8,000 was reimbursed in February 2023. (See Dfts. SMF at ¶ 33).

It is notable that at the time this lawsuit was filed in August 2022, Chase wrongfully held Plaintiff liable for $24,975 in unauthorized transactions. Plaintiff submits that the evidence will support the factual finding that, in conducting an investigation into Plaintiff's dispute of the transaction, Chase knowingly and willfully made a conclusion that could not have been reached based on a review of the evidence available to it. Chase did not meet its burden of proving that the transactions were authorized. Chase completed an inadequate investigation into Plaintiff's dispute of the unauthorized transactions. Aspiration had documents showing that the account at Aspiration was fraudulent, including that the account was opened with a phone number that didn't belong to Plaintiff.

In August 2022, Plaintiff sued for damages under Section 1693f(e), which provides for treble actual damages including emotional distress damages. Although Plaintiff sought treble $24,975 and treble emotional distress damages, Chase only reimbursed Plaintiff for $24,975, not treble actual damages and no money for emotional distress damages. Under 1693m(a), Plaintiff sued for statutory damages of $1,000, costs and a reasonable attorney's fee and Defendant has not paid any money towards that either.

## SUMMARY JUDGMENT STANDARD

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986). "[A]ll ambiguities and reasonable inferences are viewed in a light most favorable to the nonmoving party." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), *citing*, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## ARGUMENT

1. **SUMMARY**

The key to this case is Chase's reversal of a provisional credit to Ms. Newman in the amount of $24,975. The weight of the evidence before Chase, when it made that decision, showed that this amount had not been authorized by Ms. Newman. Yet, Chase went against the weight of that evidence and determined that the transfers in that amount were "authorized." Chase admits that "its review team should have asked for additional documentation and not **<u>relied solely</u>** on the electronically-completed authorization" it obtained from Aspiration. (emphasis added). See Doc. 53, pp. 11-12. Indeed, not only did Chase rely solely on a fraudulent document from

Aspiration purporting to bear Ms. Newman's electronic signature; at the time, Chase also had an acknowledgement from Aspiration that $14,000 in debits from Ms. Newman's account were incorrect, in the sense that Aspiration had returned that money.

It was the decision to reverse this provisional credit, against the weight of the evidence, that caused Ms. Newman significant injury, including emotional and psychological distress, for which she is entitled to recover.

Chase is liable under both Section 1693g of the EFTA, which limits a consumer's liability for an unauthorized transfer to $50; and under Section 1693f, which requires Chase to conduct a reasonable investigation of the unauthorized transactions upon notice from Plaintiff.

2. **THE ELECTRONIC FUNDS TRANSFER ACT**

Congress enacted the EFTA to address concerns regarding electronic banking transactions. Congress saw these transactions—processed through computer networks without human interaction—as "much more vulnerable to fraud, embezzlement, and unauthorized use than the traditional payment methods." *Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 581 (9th Cir. 2021)

The EFTA provides "a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). The "primary objective" of the EFTA "is the provision of

individual consumer rights." *Id*. Accordingly, the EFTA contains error resolution procedures and consumer protections for unauthorized electronic fund transfers. See 15 U.S.C. §§ 1693f, 1693g. Specifically, the EFTA requires a financial institution that receives sufficient timely notice from a consumer of an error to: "[1] investigate the alleged error, [2] determine whether an error has occurred, and [3] report or mail the results of such investigation and determination to the consumer within ten business days." 15 U.S.C. § 1693f(a).

The EFTA is a strict liability statute meaning a consumer may recover for violations that are neither done knowingly nor done intentionally but are even done by mistake. *Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 355 (6th Cir.2008); *Bisbey v. D.C. Nat'l Bank*, 793 F.2d 315, 318–19 (D.C.Cir.1986); *Burns v. First Am. Bank*, 2006 WL 3754820, at *6 (N.D.Ill.Dec.19, 2006).

Actual damages may include noneconomic damages, including emotional distress. *See e.g.*, *Almon v. Conduent Bus. Servs., LLC*, No. SA-19-CV-01075-XR, 2022 WL 902992, at *18 (W.D. Tex. Mar. 25, 2022).

Knowing and willful encompasses actions that are taken in reckless disregard or deliberately ignorant of their legal duty. *United States ex rel. Schutte v. SuperValu Inc*., 143 S. Ct. 1391 (2023): [T]he term "deliberate ignorance" encompasses defendants who are aware of a substantial risk that their statements are false, but intentionally avoid taking steps to confirm the statement's truth or falsity…… [And]

the term "reckless disregard" similarly captures defendants who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway. *Id*. at 1400-01.

3. **DEFENDANT FAILED TO COMPLY WITH SECTION 1693g.**

15 U.S.C. § 1693g of the EFTA provides that generally a consumer's liability for an unauthorized transfer (or a series of related unauthorized transfers, see 12 C.F.R. § 1005.6(b)) may not exceed $50, assuming the consumer reports he unauthorized transfer within 60 days of the statement upon which the unauthorized charges began appearing. Section 1693g(b) which "presumptively caps consumer liability for unauthorized transfers at $50." *Green v. Cap. One, N.A.*, 557 F. Supp. 3d 441 (S.D.N.Y. 2021). In a lawsuit concerning consumer liability for unauthorized transactions the burden of proof is on Chase to show that the transactions are authorized: "In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized . . ." 15 U.S.C. § 1693g(b).

For purposes of the EFTA, an unauthorized transfer is an error. 15 U.S.C. § 1693f(f)(1). However, the EFTA places the burden of proof on the financial institution to show that the consumer is liable for unauthorized transfers, 15 U.S.C. § 1693g(b).

Here, Chase reversed a provisional credit to Ms. Newman in the amount of $24,975, thereby holding her liable for same. That amount represented funds that Ms. Newman had timely reported to Chase, and that amount is over $50, thereby meeting the criteria of the statute. Chase did not and cannot shoulder its burden to prove that the transactions equalling this amount were not "in error." "The EFTA authorizes a private right of action against a bank that 'fails to comply' with any provision of the Act, including the provision limiting a consumer's liability for unauthorized transfers." *Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 584 (9th Cir. 2021) (citing 15 U.S.C. § 1693m(a); holding that when "a bank concludes that the EFTA authorizes liability in excess of the default cap, the consumer must allege facts plausibly suggesting that the bank's conclusion is wrong in order to state a claim that the bank has violated § 1693g.").

As this is a strict liability statute, the question of whether Chase at some point believed the funds were not in error is irrelevant to the question of liability. *See Clemmer,* 539 F.3d at 355.

4. **DEFENDANT FAILED TO COMPLY WITH SECTION 1693f**

Second, Chase violated Section 1693f which requires Chase to investigate the unauthorized transactions upon notice from Plaintiff. By relying solely on an electronically signed authorization provided by Aspiration, without considering Plaintiff's claim that the withdrawals were unauthorized and without doing a

reasonable investigation into Plaintiff's account and the bank's own records, Chase knowingly and willfully came to a conclusion that could not reasonably be reached based on the evidence available to Chase at the time of the investigation, and Plaintiff is entitled to treble damages.

Regulation E, its Official Interpretation, its Official Staff Commentary, and other regulator guidance repeatedly emphasizes that if the transfer involves a third party a detailed and meaningful investigation is required. Even based on its own characterization of its investigation, a finder of fact could determine that Chase's investigation was inadequate and unreasonable, and that Chase held Ms. Newman liable for unauthorized withdrawals from her account.

Chase relies too heavily on a "bare minimum" interpretation of its obligations to investigate. 12 CFR § 1005.11(c) states:

> (4) Investigation. With the exception of transfers covered by § 1005.14 of this part [which is not relevant to the claims against Defendant], a financial institution's review of its own records regarding an alleged error satisfies the
> requirements of this section if:
>
> (i) The alleged error concerns a transfer to or from a third party; and
>
> (ii) There is no agreement between the institution and the third party for the type of electronic fund transfer involved. *Id*.

Yet, the regulator has emphasized that even where there is no agreement between the financial institution and the third party, Defendant must conduct a meaningful investigation of its own records:

5. No EFT agreement. When there is no agreement between the institution and the third party for the type of EFT involved, the financial institution must review any relevant information within the institution's own records for the particular account to resolve the consumer's claim. The extent of the investigation required may vary depending on the facts and circumstances. However, *a financial institution may not limit its investigation solely to the payment instructions where additional information within its own records pertaining to the particular account in question could help to resolve a consumer's claim.* Information that may be reviewed as part of an investigation might include:

i.      The ACH transaction records for the transfer;

ii.     The transaction history of the particular account for a reasonable period of time immediately preceding the allegation of error;

iii.    Whether the check number of the transaction in question is notably out-of-sequence;

iv.     The location of either the transaction or the payee in question relative to the consumer's place of residence and habitual transaction area;

v.      Information relative to the account in question within the control of the institution's third-party service providers if the financial institution reasonably believes that it may have records or other information that could be dispositive; or

vi.     Any other information appropriate to resolve the claim.

Official Interpretation of § 1005.11(c)(4).

Moreover, Regulators have – since at least 2001 -- warned that:

[I]nstitutions cannot assume that they have satisfied their duty to investigate simply by concluding that the customer's debit card and PIN were used in the transaction at issue. Rather, institutions must take steps to investigate whether there are indications that unauthorized use occurred. To assist institutions in complying with EFTA and

Regulation E error resolution procedures, the OCC has compiled a list of actions banks may take to help determine whether a transaction was authorized. A reasonable investigation under Regulation E might include review of one or more of the following items:

- Documentation or written, signed statements provided by the customer.
- Historical information on the customer's pattern of use (e.g., time, frequency, location, and types and amounts of transactions).
- Location of the transaction in relation to the customer's residence, place of business, or normal shopping locations.
- Customer's location at the time of the unauthorized transaction.
- Problems reported by other customers regarding the access device or ATM.
- Signature information on POS transactions.
- Police reports, if available.
- Film from security cameras, if available.

OCC Comptroller's Handbook, Consumer Compliance-Electronic Fund Transfer Act, Version 2.0, August 2014, p.25; previously stated in OCC Advisory Letter Al 2001-9 (which was replaced by the Comptroller's Handbook) ("OCC Handbook").

Here, the facts strongly support Ms. Newman's claim that Chase did not conduct a reasonable investigation. Rather than rely upon readily available information that would have shown the transactions were unwarranted, Chase made the deliberate choice to rely on very thin information that barely contradicted the weight of the evidence and allowed them to avoid their reimbursement obligation to Ms. Newman.

In late April 2022, Plaintiff reported the theft to Chase by means of a form Chase gives to its consumers- a "Disputed Transaction Questionnaire" of the fraud. She checked the box which said:

"I am an authorized signer on, or otherwise have authority to act with respect to, the account identified above. I have reviewed the circumstances of the ACH transaction(s) identified in this questionnaire. I certify that the debit was not authorized and that it/they were not originated with fraudulent intent by me or any person acting in concert with me."

In the space on the form which says "Please provide any additional information that may help us resolve your claim. Use another sheet if you need more space." Plaintiff simply hand-wrote "Account was compromised."

(Attachment 3).

A week or so after sending in the form, Chase properly credited Ms. Newman's account for $38,975 of the $46,975 in charges. ($8,000 was reported after 60-days from when the first statement in which the unauthorized transactions appeared). Ms. Newman believed that this $38,975 credit ended this Aspiration ordeal. However, on June 8, 2022, Chase reversed $24,975 of $38,975 it had credited to Ms. Newman. In the letter, Chase wrote: "We found that the transaction was processed according to the information you provided or was authorized." (Attachment 4).

In making the reversal, Chase ignored Ms. Newman's certification on the "Dispute Transaction Questionnaire" that the charges were unauthorized and instead relied solely on the fraudulently electronically signed "Consumer ACH Authorization and Agreement." See Doc. 51-3, pp 8-9. Chase never contacted Ms. Newman to ask her whether she actually signed it, but instead it was used as a cover

to claim Ms. Newman's charges were authorized. That Chase wants to save $24,975 by denying reimbursement for unauthorized charges by claiming that they are in fact authorized violates the statute which requires that Chase must investigate the dispute and may only deny reimbursement if Chase determines that more likely than not the disputed charges are unauthorized.

Moreover, Chase did not even ask Aspiration initially whether the transactions which occurred after February 24, 2022, were authorized by Ms. Newman. This also indicates a lack of a reasonable investigation. *See* Kesterson Decl., Doc. 52, ¶ 18. There is no evidence that Chase ever asked Aspiration whether the transactions that occurred after February 24, 2022, were authorized.

Furthermore, Aspiration specifically determined that $14,000 of charges were unauthorized and returned $14,000 to Chase. This was extremely strong evidence that all of the Aspiration charges were unauthorized and should have led Chase to that obvious conclusion; a finder of fact could certainly determine this to be so.

Chase argues it is not liable at all. First, Chase notes that it complied with parts of the EFTA which requires ministerial actions such as sending letters and doing actions within certain time frames. That is not a reason to absolve Chase from liability for holding Plaintiff liable for unauthorized transfers from her account. Paradoxically, Chase even notes its violation as evidence of compliance with the law "Chase provided notice that it planned to debit the provisional credit that it had

provided". See Doc. 53, p.15. The violation in this case is that after properly giving Plaintiff $38,975, Chase took away $24,975 without shouldering the burden of proof that Plaintiff had authorized these transactions, and without conducting a reasonable investigation.

Chase does not dispute that it failed to shoulder the burden of proof that the transactions were authorized. Indeed, Chase admits that its investigation into Plaintiff's dispute of not making any phone calls to anyone, nor reviewing any of Plaintiff's documents, or her account activity was insufficient. Doc. 53, pp. 11-12 ("With the benefit of hindsight, Chase determined that its review team should have asked for additional documentation and not **relied solely** on the electronically-completed authorization.") (emphasis added).

Chase, without any case law or statute intimates that because it credited Plaintiff's account **4 months after** this case was brought, it should be absolved from liability. This is illogical and finds no support in the statute or in case law. It is undisputed that prior to this lawsuit being brought, Chase wrongfully held Plaintiff liable for $24,975 in unauthorized transactions. There is no case law or statute which allows a Defendant to reimburse a consumer for unauthorized transactions after a lawsuit is brought and escape liability for holding a consumer liable for unauthorized transactions before the lawsuit was brought.

Months after this lawsuit was brought, Chase determined that the charges were not authorized and returned the $24,975. Shortly after receiving Plaintiff's demand letter in January 2023, Chase returned $8,000. Chase filed a motion to bring a third-party complaint against Aspiration for allowing the fraudulent withdrawals after Aspiration acknowledged that all withdrawals were unauthorized.

Chase's conclusion that Ms. Newman authorized any of the transfers to Aspiration could not reasonably have been drawn based on the evidence available to it at the time of the reversal. Chase's only basis for this conclusion was a fraudulent electronically signed account application given to them by Aspiration. Ms. Newman's attestation of fraud to Chase was that the account application was fraudulent. And Aspiration knew that $14,000 of charges were unauthorized which is why Aspiration returned $14,000 to Chase who in turn credited the money to Plaintiff's account.

Only after Chase hired lawyers did it conduct a reasonable investigation into Ms. Newman's claims. And then Chase came to the obvious conclusion that it did not have proof that Ms. Newman authorized these charges. The obvious inference is that prior to this lawsuit, Chase knowingly and willfully and without reasonable basis determined that the Aspiration charges were authorized. Indeed, now Chase wants to sue Aspiration for causing it to be liable for this fraud.

Chase provides no basis for not holding it liable for its failure to conduct a meaningful investigation into Plaintiff's dispute and for holding Plaintiff liable for unauthorized transactions even though it had not met the burden of proof to show that the transactions were authorized by Plaintiff. Indeed, Chase does not dispute that the withdrawals from Ms. Newman's account were all unauthorized. Moreover, Chase wants to sue Aspiration in a third-party complaint for allowing the unauthorized withdrawals from chase to take place. Chase also implicitly admits that it held Plaintiff liable for unauthorized transaction by refunding Plaintiff for those very unauthorized transactions and not disputing the unauthorized nature of them.

But as will be shown, the investigation was not only insufficient but was woefully insufficient. So insufficient, that a jury should decide whether Chase was unable to reasonably conclude from the evidence available to it that the charges were in fact authorized, a finding which would entitled Plaintiff to treble damages.

5. **BONA FIDE ERROR DEFENSE PRESENTS GENUINE ISSUES OF FACT**

Defendant asserts that it is entitled to summary judgment because its violations were unintentional and the result of bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. It gives very little detail to what sort of procedures it maintains, or actually followed here. Chase merely offers the conclusory statement that Chase conducted a reasonable investigation by reviewing its internal records. "As part of its investigation, on May

2, 2022, Chase reviewed its internal records for Plaintiff's account". See Doc. 53, Page 11 of 31.

15 U.S.C. § 1693m(c) provides:

[A] person may not be held liable in any action brought under this section for a violation of this subchapter if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1693m(c).

To establish a "bona fide error" defense in the analogous context of debt collection, a debt collector must plead and prove by a preponderance of the evidence, see *Clark's Jewelers v. Humble*, 823 P.2d 818, 822 (Kan.Ct.App. 1991) all of the following: (1) an unintentional violation (2) resulting from a bona fide error, (3) despite maintaining procedures reasonably adapted to avoid the error. *Owen v. I.C. System, Inc*., 629 F.3d 1263, 1271 (11th Cir. 2011).

Here, Chase intentionally conducted an inadequate investigation. Chase intentionally relied on the Aspiration ACH authorization to determine that the transactions were authorized even though Aspiration did not tell Chase that Plaintiff signed the authorization. Chase intentionally ignored its own questionnaire in which Ms. Newman certified that the transactions were not authorized. Chase intentionally didn't call Ms. Newman to investigate the unauthorized charges. Chase intentionally held Plaintiff liable for the unauthorized transactions in her account. In sum, the actions giving rise to Chase's failure to investigate under 1693f and Chase's holding

Plaintiff liable for the unauthorized transactions even though it had not met its burden of proof under 1693g were very much intentional conduct leading to the violation and thus could not be said to have been done unintentionally.

The second prong of the bona fide error defense is that the Defendant must show that its violation of the act "was a bona fide error." *Edwards v. Niagara Credit Solutions, Inc*., 584 F.3d 1350, 1353 (11th Cir. 2009)." As used in the [EFTA], 'bona fide' means that the error resulting in a violation was 'made in good faith; a genuine mistake, as opposed to a contrived mistake." *Id*. at 1353 (citing *Kort v. Diversified Collection Servs., Inc*., 394 F.3d 530, 538 (7th Cir. 2005)). "To be considered a bona fide error, the debt collector's mistake must also be objectively reasonable." *Kort*, 394 F.3d at 538; *Arnold v. Bayview Loan Servicing, LLC*, 659 Fed.Appx. 568, 570 (11th Cir. 2016) (unpublished).

Here, Chase was responsible for $38,975 in unauthorized transactions from Plaintiff's account. Without even researching certain of the unauthorized transactions, Chase determined that all of the transactions were authorized. Again, chase has the burden of proof to show that the transactions are authorized when a consumer claims that there are unauthorized transactions. Chase decided that all of the transactions were authorized and only returned $14,000 because Aspiration determined that $14,000 in charges were unauthorized. That Chase did not even investigate why another institution found unauthorized transactions and returned

$14,000 when Chase found all transactions authorized on the basis of a fraudulent authorization which Aspiration itself did not believe as evidence by returning the $14,000 is objectively an unreasonable investigation.

*Smith v. Bank of Haw.*, 2019 WL 404423 (D. Haw. Jan. 31, 2019) discusses the similarities between EFTA and TILA, both of which were enacted as part of the Consumer Credit Protection Act, have notice provisions, and have actual damages liability provisions. *Id*. at *11-12; see also *Vallies v. Sky Bank*, 591 F.3d 152, 161 (3d Cir. 2009). Courts frequently rely on TILA jurisprudence when interpreting EFTA's actual damages provision because EFTA and TILA have identical provisions. *Voeks v. Pilot Travel Ctrs*., 560 F. Supp. 2d 718, 722 (E.D. Wis. 2008); see also *In re TD Bank*, 325 F.R.D. at 165 ("[C]ourts interpreting § 1693m [of EFTA] have often looked to decisions interpreting TILA for guidance."). This Court should refer to TILA's bona fide error provision to determine that that the EFTA bona fide error provision only applies to clerical errors and Chase did not commit a clerical error when it conducted its inadequate investigation and when it determined that Plaintiff authorized the unauthorized transactions she was complaining about.

Furthermore, Chase does not point to procedures to prevent consumer liability for unauthorized transactions. For example, there is no threshold on when to credit the consumer for the unauthorized charges. At best the procedures inform the representative as to what to look for to determine if there is an unauthorized

transaction but there is no criteria on how to evaluate those factors. In fact, Kesterson states Doc. 52, Page 6 of 7, that "Specialists are expected to… evaluate multiple factors in assessing a customer's claim that ACH transactions were unauthorized." While expectations are one thing, maintenance of procedures reasonably adopted to avoid holding consumer's liable for unauthorized transactions is an entirely another thing. Chase. Furthermore, there is no evidence that anyone actually followed the procedures when an investigation was done. There is indeed no evidence that an investigation actually took place other than Chase's 30(b)(6) witness who surmises that an investigation must have taken place because it should have taken place. It seems that far more likely that Chase held Plaintiff liable for the unauthorized transactions because not doing so would cost Chase $24,975.

Chase did not even ask Aspiration initially whether the transactions which occurred after February 24, 2022, were authorized by Ms. Newman- this indicates a lack of a reasonable investigation. See Kesterson Decl., Doc. 52, Page 4 of 7, Para 18. There is no evidence that Chase ever asked Aspiration whether the transactions that occurred after February 24, 2022, were authorized.

Chase claims that on May 4, 2022, and May 11, 2022, it reviewed its own records to determine whether Ms. Newman had previous transactions with Aspiration. See Kesterson Decl., Para 19, Doc. 52, Page 4 of 7. But those reviews did not cause Plaintiff to get her money back. In other words, these reviews were not

by a decisionmaker. Furthermore, the identity of the reviewer is not disclosed and the reviewer doesn't testify to reviewing them.

There is no evidence that the decisionmaker, who found solely on the basis of an electronic signature to find that Plaintiff authorized the transactions, reviewed the banks records of Plaintiff's transactions.

Chase does not say who investigated Chase's internal records, which internal records were investigated, why the internal records were investigated, when the internal records were investigated, what the investigation into the internal records consisted of, or how the internal records were investigated. Chase did not call Plaintiff to ask her about the unauthorized transactions rather Chase relied solely on a fraudulent unauthorized electronic signature to claim that Plaintiff's transactions were authorized.

Chase's investigation simply established that Aspiration had an electronic signature which authorized withdrawals from Plaintiff's Chase account. Chase did not confirm that Plaintiff gave this electronic signature; Chase did not even call Plaintiff to ask her whether she authorized these withdrawals. Indeed, Plaintiff had claimed the opposite when she filled out the questionnaire saying that the transactions were unauthorized. Chase did not determine that Plaintiff authorized Aspiration to debit Plaintiff's Chase account as Chase seems to indicate. Chase concedes that its investigation was insufficient. But Chase seems to claim that it

committed a bona fide error by coming to the wrong conclusion that the transactions were authorized. But these "procedures" seem to be nothing more than doing an unreasonable investigation and then causing a lawsuit and doing a reasonable investigation in response to the lawsuit. Chase discovered no new information between it's initial investigation that Chase admits was unreasonable and its investigation after this lawsuit was brought which caused the unauthorized charges to be refunded.

A reasonable jury could conclude that Chase knowingly and willfully concluded that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Chase at the time of its investigation. Chase had Plaintiff's statement on the questionnaire that the transactions were unauthorized, Chase did not bother to speak with Plaintiff about the transactions and Chase knew that Plaintiff had no transactions with Aspiration before the fraudulent transactions appeared. Despite all these indicators saying that the transactions were unauthorized, Chase relied on an electronic signature form which it did not confirm Plaintiff signed to say that Plaintiff authorized the Aspiration transactions.

There is no basis to deny Plaintiff statutory damages, costs and reasonable attorney's fees. The statute provides under 1693g(b) that "In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the

burden of proof is upon the financial institution to show that the electronic fund transfer was authorized". Chase admits that at the time the complaint was filed, Chase held Plaintiff liable for $24,975 of electronic fund transfers. Thus, there is no basis to deny Plaintiff actual damages, statutory damages, attorney's fees and costs even if this Court determines, and it should not, that Plaintiff is not entitled to treble damages because she cannot show that Chase "knowingly and willfully concluded that [Plaintiff's] account was not in error when such conclusion could not reasonably not reasonably have been drawn  from the evidence available to the financial institution at the time of its investigation." 1693f(e).

CONCLUSION

For the reasons set forth above, there are genuine disputes as to material facts and defendant is not entitled to judgment as a matter of law, and the Court should deny defendant's motion for summary judgment.

Respectfully submitted, this November 17, 2023.

*/s/ Justin M. Baxter*

Justin M. Baxter

**Baxter & Baxter, LLP**

8835 SW Canyon Lane, Suite 130

Portland, Oregon 97225

(503) 297-9031 (Telephone)

(503) 888-1969 (Cell)

(503) 291-9172 (Facsimile)

justin@baxterlaw.com

*/s/ Shimshon Wexler*
1118 Empire Rd.
Atlanta, GA 30329
212-760-2400
917-512-6132 (fax)
swexleresq@gmail.com