UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
SARI E. NEWMAN,

                              Plaintiff,         Docket No.: 1:22-cv-06948-JMF

    -against-

JPMORGAN CHASE BANK, N.A.,

                              Defendant.
-------------------------------------------------------X

**PLAINTIFF'S RESPONSES TO DEFENDANT'S RULE 56.1
STATEMENT OF UNDISPUTED FACTS**

**and**

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

Pursuant to Rule 56.1 of the Federal Rule of Civil Procedure and Local Civil Rule 56.1, Plaintiff Sari Newman ("Plaintiff" or "Newman") responds to defendant JPMorgan Chase Bank, N.A. ("Chase") statement of "undisputed" material facts, and provides additional material facts, as follows.

<u>Response to Defendant's Statement of Material Facts</u>

1. Plaintiff opened Chase Private Client Savings account ending in 7768 ("Account 7768") on or about November 7, 2018. (Kesterson Decl., Ex. A.)

**Response: Admitted**

2. At the time she opened Account 7768, Plaintiff "acknowledge[d] receipt of the Bank's Deposit Account Agreement or other applicable account agreement or the Chase Liquid Agreement, which includes all provisions that apply to [the Account] . . . and agree[d] to be bound by the terms and conditions contained therein as amended from time to time." (Kesterson Aff., Ex. A; Stagg Decl. Ex. E at 36:5-13.)

1

**Response: Admitted, but not material. The terms of the agreement do not override the statute's dictates so the account agreement is irrelevant. 15 U.S.C. § 1693l; 12 CFR 1005.2(m)**

3. On or about January 5, 2022, an account in Plaintiff's name was opened with Aspiration Financial, LLC ("Aspiration") using Plaintiff's personal identifiers, including her name, birthdate, social security number and address. (Stagg Decl., Exs. B-D.)

**Response: Admitted in part, denied in part. The phone number associated with the account was not associated with Plaintiff. (Attachment 2, Declaration of Sari Newman ("Newman Dec.") at ¶ 21).**

4. On January 15, 2022, a Consumer ACH Authorization and Agreement (the "Authorization") was electronically signed with Plaintiff's name. (Kesterson Decl., Ex. F.)

**Response: Denied. The record does not reflect whether the "signature" was actually Plaintiff's name, or a "check the box" type of signature.**

5. Between January 19, 2022 and January 25, 2022, three ACH transfers totaling $4,075 were initiated from Account 7768 by Aspiration. These transfers were reflected on the Account 7768 statement for the period January 1, 2022 to January 31, 2022. (Kesterson Decl., Ex. B at Chase 000130-000135.)

**Response: Admitted.**

6. Plaintiff received monthly statements that ended on the last day of the month. (Deck Aff., Ex. A; Kesterson Decl., Ex. B.)

**Response: Denied. Plaintiff did not access her statements, so she disputes receiving same. (Newman Dec. at ¶ 6). Also, not material. There is no dispute that she timely reported**

**the $24,975 representing the amount that had been provided as a provisional credit and then wrongfully reversed, which is the subject of this case. (Kesterson Decl., at 000165-000166).**

7. She also accessed her Chase accounts from her mobile phone, which she accessed at least monthly. (Stagg Decl, Ex. E at 37:10-25, 38:25-39:50; 42:13-17).

**Response: Admitted, but not material. There is no dispute that she timely reported the $24,975 representing the amount that had been provided as a provisional credit and then wrongfully reversed, which is the subject of this case. (Kesterson Decl., at 000165-000166).**

8. Between February 4, 2022 and February 24, 2022, eight ACH transfers totaling $15,900 were initiated from Account 7768 by Aspiration. These transfers were reflected on the Account 7768 statement for the period February 1, 2022 to February 28, 2022. (Kesterson Decl., Ex. B at Chase 000136-000141).

**Response: Admitted. Although Plaintiff never saw these charges (See Newman Dep. at pp. 40-41:23-12. Also, not material. There is no dispute that she timely reported the $24,975 representing the amount that had been provided as a provisional credit and then wrongfully reversed, which is the subject of this case. (Kesterson Decl., at 000165-000166).**

9. Between March 3, 2022 and March 30, 2022, eight ACH transfers totaling $15,000 were initiated from Account 7768 by Aspiration. These transfers were reflected on the Account 7768 statement for the period March 1, 2022 to March 31, 2022. (Kesterson Decl., Ex. B at Chase 000142-000147).

**Admitted. Although Plaintiff never saw these charges (See Newman Dep. at pp. 40-41:23-12.**

10. Between April 5, 2022 and April 18, 2022, six ACH transfers totaling $12,000 were initiated from Account 7768 by Aspiration. These transfers were reflected on the Account 7768

statement for the period April 1, 2022 to April 29, 2022. (Kesterson Decl., Ex. B at Chase 000148-000153.)

**Admitted. Although Plaintiff never saw these charges (See Newman Dep. at pp. 40-41:23-12.**

11. Despite having access to her statements and accounts, Plaintiff did not notify Chase of any account errors until April 27, 2022. (Stagg Decl. Ex. E at 37:10-25; 38:25-39:5; 42:13-17).

**Response: Admitted, but not material. There is no dispute that she timely reported the $24,975 representing the amount that had been provided as a provisional credit and then wrongfully reversed, which is the subject of this case. (Kesterson Decl., at 000165-000166).**

12. On April 27, 2022, Plaintiff contacted Chase to dispute the twenty-five ACH transfers initiated by Aspiration. (Kesterson Decl., Ex. D at Chase 000065-000066; Stagg Decl., Ex. F at 12:15-20.)

**Response: Admitted.**

13. Later that day, Chase sent Plaintiff a letter indicating that it "researched the transactions [she] reported." (Kesterson Decl., Ex. E.)

**Response: Admitted.**

14. In the letter, Chase stated that it would not be providing credit to Plaintiff for the transactions initiated by Aspiration between April 13, 2022 and April 18, 2022 because she was "responsible for any transactions that occur more than 60 days after we send the first statement on which these transactions appear, which was 01/31/2022." (*Id.*)

**Response: Admitted.**

15. On or about April 28, 2022, Plaintiff opened another account, Chase Premier Savings account ending in 3606 ("Account 3606"). (Kesterson Decl., Ex. B at Chase 000148, 000152.)

**Response: Denied. Chase opened this account for Plaintiff.**

16. When a customer disputes an ACH debit, Chase reviews the claim. (Kesterson Decl., ¶¶ 6-7, Ex. D.)

**Response: Admitted.**

17. As part of its investigation process, Chase had procedures in place for specialists to use when reviewing ACH disputes and assessing a customer's claim that ACH transactions were unauthorized. (Kesterson Decl. at ¶¶ 6-7, 25-27, Ex. H.)

**Response: Admitted.**

18. Upon receipt of Plaintiff's claim, Chase investigated its own records related to Account 7768 and the subject transactions. (Kesterson Decl., Ex. D at Chase 000053, 000062-000065; Stagg Decl., Ex. F at 66:19-68:7.)

**Response: Admitted, but not material. As shown in Plaintiff's brief, the investigation of its own records was deliberately inadequate.**

19. In furtherance of its investigation, on or about May 2, 2022, Chase contacted Aspiration to notify it of Plaintiff's dispute and sought a signed authorization for the challenged transactions that occurred between January 19, 2022 and February 24, 2022. (Kesterson Decl., Ex. D at Chase 000059-000060, Ex. F; Stagg Decl. Ex. F at 69:7-9, 70:18-71:1-4.)

**Response: Admitted.**

20. On or about May 4, 2022, $38,975 in provisional credits was applied to Account 3606, reflecting the amounts withdrawn from Account 7768 for the transactions that occurred

between January 19, 2022 and April 5, 2022 (the "Investigation Period"). (Kesterson Decl., at ¶ 20, Ex. B at Chase 000158-000159, Ex. G.).

**Response: Admitted.**

21.    On May 11, 2022, Coastal Community Bank faxed a January 15, 2022 Proof of Authorization to Chase. (Kesterson Decl. at ¶ 21, Ex. F.)

**Response: Admitted.**

22.    It was entitled "Consumer ACH Authorization and Agreement" and contained an electronic signature for Plaintiff. (*Id.*)

**Response: Denied. The record does not reflect whether this "signature" was actually Plaintiff's name or a "check the box" type "signature."**

23.    Until Chase received the Consumer ACH Authorization and Agreement, a review of Chase's own records indicated that Plaintiff's claim was valid and Chase was prepared to find in Plaintiff's favor. (Kesterson Decl. at ¶ 22, Ex. D at 000053-000054, 000058-000059; Stagg Decl. Ex. F at 75:19-77:2.)

**Response: Admitted.**

24.    Aspiration returned $14,000 to Chase for the transactions that occurred between March 4, 2022 and April 5, 2022. (Kesterson Decl. at ¶ 29, Ex. I; Stagg Decl. Ex. F at 27:13-24, 90:17-20.)

**Response: Admitted.**

25.    On or about June 8, 2022, Chase notified Plaintiff that $24,975 of the provisional credit, representing the transactions between January 19, 2022 and March 4, 2022, would be removed on or after June 16, 2022. (Kesterson Decl., Ex. B at 000165-000166, Ex. K.)

**Response: Admitted.**

26. The following day, June 9, 2022, Chase advised Plaintiff that the remaining provisional credit from the transactions between March 4, 2022 and April 5, 2022, totaling $14,000, was permanent. (Kesterson Decl., Ex. I.)

**Response: Admitted.**

27. On or about July 1, 2022, Aspiration closed Plaintiff's account at Aspiration due to identity theft. (Stagg Decl. Ex. D.) The documents received from Aspiration in response to Chase's subpoena do not show that Aspiration ever notified Chase of the identity theft.

**Response: Admitted.**

28. On July 18, 2022, Chase advised Plaintiff that it denied the remainder of her claim. (Kesterson Decl., Ex. J.)

**Response: Admitted.**

29. Plaintiff commenced the present action on August 15, 2022, seeking $42,900 in actual loss plus damages under the Electronic Funds Transfer Act ("EFTA"). (Dkt. 1.)

**Response: Admitted.**

30. On November 22, 2022, Chase provided a credit of $24,978.14 to Account 3606, representing a return of the reversed provisional credit plus $3.14 in interest. (Kesterson Decl., Ex. B at Chase 000196.)

**Response: Denied. This was a provisional credit.**

31. Plaintiff filed an Amended Complaint on December 19, 2022, alleging a $42,900 loss and seeking various damages under the EFTA. (Dkt. 23.)

**Response: Admitted.**

32. Chase filed its Answer to Amended Complaint on December 28, 2022. (Dkt. 24.)

**Response: Admitted.**

33. On February 8, 2023, Chase provided a credit of $8,001.21 to Account 3606, representing the ACH transactions outside the Investigation Period, plus $1.21 in interest. (Kesterson Decl., Ex. L.)

**Response: Admitted.**

34. Plaintiff has been reimbursed for the entire $46,975 withdrawn by Aspiration. (Kesterson Decl. Exs. B at Chase 000196, I, L.)

**Response: Admitted.**

35. The claim notes, testimony and produced documents do not show that Chase knowingly or willfully concluded Plaintiff's account was not in error based on the evidence available during Chase's investigation or that any error by Chase was intentional. (Kesterson Decl., Ex. D; Stagg Decl., Ex. F.)

**Response: Objection. This is a legal conclusion and not a statement of fact. As set forth in Plaintiff's briefing, there is significant evidentiary support for the claim that Chase**

**acted intentionally and based upon a unreasonable investigation. To the extent this is a factual statement, denied, based upon the arguments set forth in Plaintiff's briefing.**

36. No testimony or documents indicate that Chase's procedures for investigating Plaintiff's claim were inadequate. (Kesterson Decl., Ex., D; Stagg Decl., Ex. F.)

**Response: Objection. This is a legal conclusion and not a statement of fact. As set forth in Plaintiff's briefing, there is significant evidentiary support for the claim that Chase acted intentionally and based upon a unreasonable investigation. To the extent this is a factual statement, denied, based upon the arguments set forth in Plaintiff's briefing.**

37. On May 2, 2023, Aspiration issued a check for $13.78 to Plaintiff with a memo of "Account Closure Balance Remittance". (Stagg Decl. Ex. E at 140:15-141:9.) Plaintiff has not negotiated the check. (Stagg Decl., Ex. E at 140:20-141:2.)

**Response: Admitted.**

Statement of Additional Material Facts

1. Plaintiff Sari Newman is 69 years' old. (Attachment 2, Declaration of Sari Newman ("Newman Dec.") at ¶ 2).

2. In 2018, her husband was diagnosed with cancer, and they were initially told that the cancer was manageable. (Id. at ¶ 3).

3. However, they soon learned that the cancer was terminal, and in October 2018, Perry passed away. (Id.)

4. After her husband's death, Ms. Newman understandably was suffering but she was slowly moving on with her life.

5. Then the $46,975 theft which gave rise to this lawsuit occurred. Ms. Newman's life savings consisted of the proceeds of her husband's life insurance policy. (Id. at ¶ 4).

6. The proceeds were used to purchase an apartment to live in, and the remainder was put into her Chase savings account. (Id. at ¶ 5).

7. Ms. Newman believed that her remaining time living would be over after she spent this money and would not have any money left to live off. (Id. at ¶ 6; see also Deposition of Sari Newman ("Newman Dep.") at 41:4-12).

8. A total of $46,975 was stolen from Ms. Newman's savings account between January 19, 2022, and April 18, 2022, by means of small withdrawals to a fraudulently opened Aspiration Financial account. (See Newman Dec. at ¶¶ 7-23).

9. Until Ms. Newman learned of the theft, she had never heard of Aspiration Financial. (Id. at. ¶ 23).

10. When Ms. Newman learned of the theft, she called Chase's fraud department who told her to go into a branch to discuss the theft. (Id. at ¶ 8).

11. Ms. Newman went into her branch and was told by the people who worked in the branch that she would get the money back. (Id. at ¶ 9).

12. In fact, though the investigation was taking place at an unknown location in an unknown way by unknown people who never bothered to call Ms. Newman and properly investigate the theft, Ms. Newman also filed a police report about the theft. (Id. at ¶ 10).

13. Shortly after reporting the theft, Chase wrote to Ms. Newman saying that because certain Aspiration charges were not reported within 60 days of the first statement upon which they appeared, they would not be credited. (Id. at ¶ 12).

14. Ms. Newman also received a separate letter listing the charges that Chase was liable for. (Id. at ¶ 12). That letter asked her to return a form providing information about the theft. (Id.).

15. Shortly after returning the form attesting to the nature of the Aspiration theft, Ms. Newman was given a $38,975 credit. (Id. at ¶ 13).

16. Ms. Newman did not believe this credit was a provisional one, but believed that this was a final decision, and was ready to move on with her life. (Id. at ¶ 14).

17. Unfortunately, on June 8, 2022, Chase provided Ms. Newman with a letter stating that it changed its mind. Chase reversed $24,975 of charges of the provisional credit which occurred from 1/19/22 until 3/4/22, claiming the charges were authorized. (Id. at ¶ 15).

18. On June 9, 2022, Ms. Newman received another letter saying that Chase made permanent the provisional credit of the other $14,000 in charges which occurred from 3/4/22 until 4/5/22 because it agreed those transactions were incorrect. (Id. at ¶ 16).

19. There is a question of fact as to whether this $14,000 encompasses transactions which occurred after 4/5/22 and Chase falsely attributed the refunded $14,000 to charges that Chase was liable for rather than to $8,000 of unauthorized charges which were reported late and didn't need to be refunded. It is noteworthy that two separate charges for $2,000 which occurred on 3/4/22 were treated differently by Chase; one was determined to be authorized another was determined to be unauthorized. (See Newman Dec. at ¶ 17).

20. Ms. Newman exercised the rights given to her by the June 8, 2022 letter, which provided an opportunity for her to see the information that Chase used for its research on the Aspiration charges. (Id. at ¶ 19).

21. On July 18, 2022, Chase sent that information to Ms. Newman, which consisted solely of a fraudulent electronic signature on an Aspiration account application which Ms. Newman had no knowledge of, and which was the totality of Ms. Newman's dispute. (Id. at ¶ 20).

22. The application cited a phone number for Ms. Newman that was not her actual phone number and with which she had never been associated. (Id. at ¶ 21).

23. After this money was retaken from her, Ms. Newman was helpless and didn't know what to do. (Id. at ¶ 18).

24. Ms. Newman was suicidal and saw a therapist for the first time in her life. (Id.). She was not able to sleep and lost 20 pounds. (Id.).

25. She wrote to congresswoman Kathleen Rice and tried to get Chase to fix the problem. (Id.).

26. Only after this lawsuit was filed, Chase reimbursed her for a total of $46,975 which is the sum of the unauthorized transactions. (Id. at ¶¶ 24-25).

27. $14,000 was reimbursed before this lawsuit was filed. (Id. at ¶ 16).

28. After this lawsuit was filed, $24,975 was provisionally reimbursed in November 2022 (a final decision as to the $24,975 was made in January 2023). (Id. at. ¶ 25).

Respectfully submitted, this November 17, 2023.

*/s/ Justin M. Baxter*
Justin M. Baxter
**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, Oregon 97225
(503) 297-9031 (Telephone)
(503) 888-1969 (Cell)
(503) 291-9172 (Facsimile)
justin@baxterlaw.com

*/s/ Shimshon Wexler*
1118 Empire Rd.
Atlanta, GA 30329
212-760-2400
917-512-6132 (fax)
swexleresq@gmail.com