UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                            :

SARI E. NEWMAN,                                 :

                    Plaintiff,         :

                                   :                22-CV-6948 (JMF)

         -v-                       :

                                   :             <u>OPINION AND ORDER</u>

JP MORGAN CHASE BANK, N.A.,        :

                                 :

                  Defendant.      :

                                 :
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Sari E. Newman had a savings account with Defendant JP Morgan Chase Bank, N.A. ("Chase Bank").  In 2022, $46,975 was transferred out of the account to another financial institution.  When Newman discovered the transfers, she contacted Chase Bank to dispute them. After an investigation, Chase Bank credited Newman's account for some, but not all, of the money.  It has since returned the rest of the disputed funds (plus interest).  In this suit, Newman nevertheless contends that Chase Bank's investigation and initial failure to return the funds violated the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq*.  Chase Bank now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment, arguing, among other things, that the EFTA's bona fide error defense, which insulates banks from liability for certain unintentional errors, applies.  *See* ECF No. 55; *see also* ECF No. 61 ("Def.'s Mem.").[1]  The Court agrees.  Accordingly, and for the reasons that follow, Chase Bank's motion for summary judgment is GRANTED.

---

[1] Chase Bank's memorandum of law and other documents in this case are currently filed under seal.  Below, the Court orders Chase Bank to show cause why these materials should remain sealed.

## BACKGROUND

The relevant facts are undisputed.  In 2018, Newman opened a savings account with Chase Bank.  ECF No. 64-1 ("Pl.'s Rule 56.1 Responses"), ¶ 1.  Through twenty-five ACH transfers occurring between January 19, 2022, and April 18, 2022, $46,975 was transferred from Newman's Chase Bank account to an account under Plaintiff's name with Aspiration Financial, LLC ("Aspiration").  *Id.* ¶¶ 4-12.  On April 27, 2022, Newman first contacted Chase Bank to dispute these transfers on the ground that they were a result of fraud.  *Id.* ¶ 12.  Chase Bank began an investigation and, on May 4, 2022, issued a provisional credit for $38,975.  *Id.* ¶¶ 16-20.  Chase Bank did not provisionally credit Newman for $8,000 of the total because disputed transactions totaling that amount had occurred more than sixty days before Newman contacted the bank.  *See id.* ¶ 14; *see also* 15 U.S.C. § 1693f(a); 12 C.F.R. § 1005.11(b)(1)(i).

Chase Bank continued investigating Newman's claim and determined that it could not prove that she had in fact authorized the transfers; accordingly, it was prepared to find in her favor and credit her account.  Pl.'s Rule 56.1 Responses ¶ 23.  On May 11, 2022, however, Chase Bank received an ACH Authorization and Agreement form from Aspiration reflecting Newman's electronic signature, causing Chase Bank to change course.  *See id.* ¶¶ 21-23.[2]  A few weeks later, on June 9, 2022, Aspiration returned $14,000 to Chase Bank for the transactions that had occurred between March 4, 2022, and April 5, 2022, and Chase Bank permanently credited Newman's account in that amount.  *See id.* ¶¶ 24, 26.  On July 18, 2022, Chase Bank notified Newman that the rest of her claim — for the balance of $24,975 — was denied.  *See id.* ¶ 28.

---

[2]     Another entity, Coastal Community Bank, actually sent the Authorization form to Chase Bank on behalf of Aspiration.  *See* ECF No. 52 ("Kesterson Decl."), ¶ 21; Pl.'s Rule 56.1 Responses ¶ 21.

On August 15, 2022, Newman commenced this action.  *See* ECF No. 1.  On November 22, 2022, before Newman filed the operative Amended Complaint, Chase Bank reimbursed her $24,975, plus $3.14 in interest.  *See* Pl.'s Rule 56.1 Responses ¶ 30.  On February 8, 2023, Chase Bank reimbursed the remaining $8,000, plus $1.21 in interest — purportedly "as a gesture of goodwill even though [Newman] failed to timely notify the bank of the $8,000 in disputed transactions within 60 days."  Def.'s Mem. 6; *see* Pl.'s Rule 56.1 Responses ¶ 33.  Thus, it is undisputed that Chase Bank has now reimbursed Newman for the entire $46,975 that was transferred from her account to Aspiration.  *See* Pl.'s Rule 56.1 Responses ¶ 34.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  Such a dispute qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  Critically, however, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval*

*Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [her] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on "personal knowledge," must "set out facts that would be admissible in evidence," and must "show that the affiant or declarant is competent to testify on the matters stated." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

## DISCUSSION

The EFTA "provide[s] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund . . . transfer systems." 15 U.S.C. § 1693(b); *see Fischer & Mandell LLP v. Citibank, N.A.*, No. 09-CV-1160 (RJS), 2009 WL 1767621, at *3 (S.D.N.Y. June 22, 2009). The EFTA sets forth a procedure for resolving electronic fund transfer errors, including, as relevant here, when a customer believes her bank transferred money into or out of her account without authorization. *See* 15 U.S.C. § 1693f; *see also id.* at § 1693f(f)(1) (defining "error" to include "unauthorized electronic fund transfer[s]"); *Zarate v. Chase Bank*, No. 22-CV-1178 (AMD), 2023 WL 5956334, at *3 (E.D.N.Y. Sept. 13, 2023). Newman argues that Chase Bank violated the EFTA because it failed to conduct a good faith

investigation and had no reasonable basis to deny her claim regarding the transfers to Aspiration. *See* ECF No. 22 ("Compl."), ¶ 66.  In connection with these alleged violations, she seeks actual damages, statutory damages, treble damages, attorney's fees, and costs.  *See id.* ¶¶ 68-74; *see also* 15 U.S.C. §§ 1693m(a), 1693f(e).

At the outset, two aspects of Newman's claims require little discussion.  First and foremost, there is no dispute that her claim for actual damages is moot as Chase Bank has now fully reimbursed her for the entire $46,975 that was transferred from her account to Aspiration. *See* Pl.'s Rule 56.1 Responses ¶ 34.  Chase Bank does not, however, argue that the case is moot and wisely so, as Newman also seeks statutory damages, treble damages, attorney's fees, and costs.  *See, e.g.*, *Wilner v. OSI Collection Servs., Inc.*, 201 F.R.D. 321, 323 (S.D.N.Y. 2001). Second, Newman does not respond to Chase Bank's argument that all of her claims relating to the $8,000 in transfers for which Chase Bank did not provisionally credit Newman's account fail as a matter of law because the relevant transfers occurred more than sixty days before she contacted the bank.  *Compare* Def.'s Mem. 14-18, *with* ECF No. 64 ("Pl.'s Opp'n"). Accordingly, the Court deems her claims relating to that money to be abandoned.  *See, e.g.*, *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014); *see also, e.g.*, *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 142-44 (2d Cir. 2016).  In any event, they would indeed fail as a matter of law as untimely.  *See, e.g.*, *Zaidi v. JP Morgan Chase Bank*, *N.A.*, No. 19-CV-1080 (DRH), 2021 WL 848864, at *4 (E.D.N.Y. Mar. 5, 2021) (granting summary judgment to the defendant bank on an EFTA claim where it was undisputed that the plaintiff had failed to notify the bank of the alleged error within the sixty-day statutory period).

In any event, Chase Bank is entitled to summary judgment on all of Newman's claims for a different reason: because the bona fide error defense set forth in 15 U.S.C. § 1693m(c)

applies.[3]  Section 1693m(c) "insulates [banks] from liability even when they have failed to

comply with certain other governing requirements."  *Ramirez v. LTD Fin. Servs., L.P.*, No. 19-

CV-02575 (CAP) (RDC), 2021 WL 5027860, at *7 (N.D. Ga. July 16, 2021), *report and*

*recommendation adopted*, 2021 WL 9598131 (Sept. 2, 2021).[4]  To prevail in asserting the

defense, a bank must "show by a preponderance of the evidence that the violation [1] was not

intentional and [2] resulted from a bona fide error [3] notwithstanding the maintenance of

procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1693m(c); *see Ramirez*,

2021 WL 5027860, at *7.  Assuming without deciding that Chase Bank violated the EFTA in the

first instance, the evidence supports each of these elements.  *See, e.g.*, *Wheeler v. Fitness*

*Formula, Ltd.*, No. 18-CV-582 (RWG), 2018 WL 5981849, at *1 (N.D. Ill. Nov. 14, 2018) ("The

court need not find that a violation occurred to consider if defendants can successfully assert the

bona-fide error defense."); *accord Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536

(7th Cir. 2005).

     Beginning with the third prong, there is no genuine dispute that Chase Bank maintains

procedures reasonably adapted to avoid errors such as the one alleged here.  Contrary to

Newman's assertion that Chase Bank "gives very little detail [as] to what sort of procedures it

---

[3]     Strictly speaking, Chase Bank's Answer to Newman's Amended Complaint asserted the bona fide error defense under the Truth in Lending Act ("TILA") rather than the EFTA.  *See* ECF No. 24, ¶ 95.  Chase Bank contends that this was "[d]ue to a scrivener's error" and asks the Court to disregard it or allow amendment of the Amended Answer.  *See* Def.'s Mem. 18 n.12. Newman does not oppose the request and implicitly concedes the lack of any prejudice by asking the Court to consider TILA cases given "the similarities between EFTA and TILA."  Pl.'s Opp'n 24.  Accordingly, the Court will construe the Answer to assert the affirmative defense under the EFTA.  *See, e.g.*, *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350-51 (2d Cir. 2003).

[4]     The EFTA's bona fide error provision "mirrors" the bona fide error provision in the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(c), "and has been interpreted by federal courts in precisely the same way," *Ramirez*, 2021 WL 5027860, at *6.  Accordingly, in the discussion that follows, the Court relies on cases involving both statutes.

maintains," Pl.'s Opp'n 21, Chase Bank submitted evidence of the step-by-step procedures that are to be followed when a customer disputes a transfer. Specifically, when a customer alleges fraudulent activity, a Chase Bank specialist is assigned to review the claim and tasked with following a "Job Aide" that is designed around the requirements of the EFTA and corresponding regulations. Kesterson Decl. ¶ 4; ECF No. 52-1 ("Job Aide"). Throughout the investigation process, the specialist is required to take notes of developments. *See* Kesterson Decl. ¶ 7; *see also* ECF No. 51-14 ("Newman Investigation Notes"). At the time relevant here, Chase Bank's Job Aide directed specialists to review certain information upon receiving a transfer authorization form from an originating depository financial institution — in this case, Aspiration. Kesterson Decl. ¶¶ 24-26; Job Aide 19-20. The Job Aide instructed a specialist, upon receiving such a form, to consider multiple factors in evaluating whether the transfer appeared to have been authorized, such as the name of the authorizing party, the authorizing party's contact information, other information identifying the authorizing party, and copies of signatures or electronic signatures, and to make a judgment call based on all available information. *See* Kesterson Decl. at ¶ 25; Job Aide 19-20.

This process complies with the EFTA's requirements and is reasonably tailored to investigate potentially unauthorized transfers. *See, e.g.*, *Ramirez*, 2021 WL 5027860, at *8 (finding that targeted internal policies "together with corresponding employee training programs" were evidence of procedures reasonably adapted to prevent unauthorized withdrawals); *see also, e.g.*, *Arnold v. Bayview Loan Servicing*, 659 F. App'x 568, 571 (11th Cir. 2016) (finding procedures based on written materials and trainings sufficient for the bona fide error defense); *Isaac v. RMB Inc.*, 604 F. App'x 818, 820 (11th Cir. 2015) (finding "specifically trained" employees to be a critical part of the defendant's policies and procedures for purposes of

the bona fide error defense).  Newman contends that Chase Bank's procedures were insufficient because they did not require calling the customer.  *See* Pl.'s Opp'n 5, 22, and 26.  But there is no reason to believe that telephone calls to a customer are the only reasonable way to avoid errors. (And, not for nothing, Chase Bank actually did call Newman several times, *see, e.g.*, Newman Investigation Notes 7-9, 11-13, 20, 28, 30, 34, and, in any event, communicated the actions it was taking through letters, *see, e.g.*, Pl.'s Rule 56.1 Responses ¶¶ 13-14, 25-26, 28.)  Newman also faults Chase Bank's procedures on the ground that they offer specialists "no criteria on how to evaluate [the relevant] factors."  Pl.'s Opp'n 25.  But neither the EFTA nor the corresponding regulations, *see* 12 C.F.R. § 205 ("Regulation E"), offer such criteria or dictate the weight that a bank must give to any particular information.  And given that each dispute may involve unique circumstances, the fact that the procedures call for the exercise of judgment — and thus leave room for errors — does not render them unreasonable.  *See, e.g., Ramirez*, 2021 WL 5027860, at *8 (noting that the defense "does not require [banks] to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution.  In short, the relevant procedures need not be foolproof." (cleaned up)).

Turning to the first two prongs, Chase Bank has also shown that its violation (if there was one) was unintentional and a bona fide error, defined as one "made in good faith; a genuine mistake, as opposed to a contrived mistake."  *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009) (cleaned up).  The evidence shows that the specialist assigned to investigate Newman's claim followed the protocol set forth in the applicable Job Aide and dutifully maintained notes throughout the investigation.  *See* Kesterson Decl. ¶¶ 6-7, 15, 17-20, 23-27; *see generally* Newman Investigation Notes.  Significantly, Chase Bank initially concluded that it could not prove that Newman had in fact authorized the transfers and was

prepared to find in her favor and credit her account.  *See* Pl.'s Rule 56.1 Responses ¶ 23.  It was only when Chase Bank received the ACH Authorization and Agreement form from Aspiration, which reflected Newman's signature (albeit electronic signature), that Chase Bank changed course and denied the claim.  *See id.* ¶¶ 21-23.  To its credit, Chase Bank now acknowledges "that additional documents should have been obtained to establish aithorization [sic]."  Def.'s Mem. 22*; accord* Kesterson Decl. ¶ 27.  But it is plain that the failure to seek additional documents and to rely on the electronic signature alone were errors in judgment, not intentional or contrived mistakes.  In other words, the violation here (if there was one) "occurred not because of a paucity of procedures reasonably calculated to avoid the error, but because of human blunder."  *Ramirez*, 2021 WL 9598131, at *6.

Newman's counterarguments fail to persuade.  First, she contends that the bona fide error defense does not apply to Chase Bank's error because the defense applies only to "clerical" errors.  *See* Pl.'s Opp'n 24.  But that is incorrect.  The defense applies not only to clerical errors, but also to "mistakes of fact," which is what occurred here.  *Ramirez*, 2021 WL 5027860, at *8 (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604-05 (2010)).  Second, she asserts that the defense fails because Chase Bank's actions *leading* to the error were intentional.  *See* Pl.'s Opp'n 22-23.  That argument also misses the mark, as "an unintentional act" in this context "is one that lacks 'specific intent' to violate the law.  In other words, a [bank] must show 'that *the violation* was unintentional, not that the underlying act itself was unintentional.'"  *Ramirez*, 2021 WL 5027860, at *7 (quoting *Arnold*, 659 F. App'x at 570) (emphasis added)).  Third, Newman contends that Chase Bank should have been alerted to the possibility of fraud when, on June 9, 2022, Aspiration returned a portion of the money at issue — namely, $14,000.  *See* Pl.'s Opp'n 23-24.  But there is no evidence in the record that Aspiration

did so — let alone that Chase Bank knew (or should have known) that it did so — based on

suspicions or a finding of fraud.[5]  To the contrary, the evidence shows that it was not until three

weeks later, on June 30, 2022, that Aspiration itself learned of the suspected fraud.  *See* ECF No.

56-4, at 3-4.  Finally, Newman points to the fact that the account application for the Aspiration

account referenced a telephone number that has no connection to her.  *See* Pl.'s Opp'n 7.  But

that document was not obtained by Chase Bank until after this lawsuit was commenced.  *See*

ECF No. 67 ("Def.'s Reply"), at 6; ECF No. 56, Exs. 3-4.[6]

**CONCLUSION**

In sum, if Chase Bank violated the EFTA in its dealings with Newman at all, its violation

was the result of "human agency, which, even when regulated by routine procedures, is bound to

---

[5]     In fact, the evidence suggests that Aspiration returned the $14,000 based on a National Automated Clearinghouse Association rule requiring the return of funds transferred within a certain period before a dispute.  *See* Def.'s Reply 5; Kesterson Decl. ¶ 18; *see also* ECF No. 70. Whatever the case, the key point is that nothing about the return of the funds led or should have led Chase Bank to conclude that Newman had been the victim of fraud.  Indeed, if Aspiration had returned the funds for that reason one would assume they would have returned *all* of the transferred funds.

[6]     Nor was Chase Bank under any obligation to obtain this document as part of its initial investigation.  In fact, despite Newman's suggestions to the contrary, *see* Pl.'s Opp'n 14, Chase Bank was under no obligation to contact Aspiration as part of its investigation *at all*.  Applicable regulations provide that when, as here, there is no agreement between the two institutions involved in a transfer, a bank is required only to review its own records in response to a dispute. *See Nero v. Uphold HQ Inc*., 688 F. Supp. 3d 134, 148 (S.D.N.Y. 2023) ("A financial institution's 'review of its own records regarding an alleged error' satisfies the investigation requirement . . . ." (quoting 12 C.F.R. § 1005.11(c)(4))); *Holmes v. Cap. One, N.A.*, No. 22-CV-0823 (GTS), 2023 WL 6318883, at *8 (N.D.N.Y. Sept. 28, 2023) ("Regulation E states that a bank's review of its own records satisfies its investigative obligations under the EFTA.").

blunder on occasion." *Ramirez*, 2021 WL 5027860, at *9. Accordingly, the bona fide error defense shields Chase Bank from liability and its motion for summary judgment is GRANTED.[7]

One housekeeping matter remains. Chase Bank filed a letter-motion to seal some of its exhibits filed alongside their motion papers. ECF Nos. 46, 47. The Court granted this letter-motion only temporarily, pending its decision on the underlying motion. ECF No. 48. It is well established that filings that are "relevant to the performance of the judicial function and useful in the judicial process" are considered "judicial documents" to which a presumption in favor of public access attaches. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Significantly, assessment of whether the presumption in favor of public access is overcome must be made on a document-by-document basis. *See, e.g.*, *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019). Accordingly, **no later than two weeks from the date of this Opinion and Order**, Chase Bank is ORDERED to show cause in writing, on a document-by-document basis, why the documents currently filed under seal should remain filed under seal or in redacted form in light of this Opinion and Order. Proposed redactions should be "narrowly tailored" to achieve the aims that justify sealing. *See, e.g.*, *Brown*, 929 F.3d at 47 (internal quotation marks omitted).

The Clerk of Court is directed to terminate ECF No. 55, to enter judgment for Chase Bank in accordance with this Opinion and Order, and to close the case.

SO ORDERED.

Dated: June 26, 2024
      New York, New York

                                                 JESSE M. FURMAN
                                      United States District Judge

---

[7]     In light of the Court's conclusion, the supplemental authority submitted by Newman on June 24, 2024, *see* ECF No. 72 (citing to *Nelipa v. TD Bank, N.A.*, No. 21-CV-1092 (DH) (JAM), 2024 WL 3017141, at *1 (E.D.N.Y. June 17, 2024)), is immaterial.